IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOBY MINETT, | ) |
| Plaintiff, | ) No. 13 CV 4717 |
| v. | ) |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Toby Minett ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for supplemental security income benefits under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6].

Claimant moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 16]. For the reasons stated below, Claimant's motion for summary is granted. The matter is remanded to the Social Security Administration ("SAA") for further proceedings consistent with the Court's Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On October 13, 2010, Claimant filed an application for supplemental security income, alleging a disability onset date of April 1, 1999. R. 67. On January 24, 2011, the SAA initially denied his application. *Id.* Then, on April 1, 2011, the SAA denied the application on reconsideration. R. 68. Shortly thereafter, Claimant filed a request for an administrative hearing. R. 85-86. An Administrative Law Judge ("the ALJ") held a hearing on December 14, 2011. R. 28. At that hearing, Claimant, who was represented by counsel, appeared and testified. R. 28, 33-53. Also, Dr. Ronald A. Semerdjian, a medical expert, and Pamela Tucker, a vocational expert ("the VE"), appeared and testified. R. 28, 53-60, 60-65.

A few months after the hearing, on March 30, 2012, the ALJ issued his written decision. R. 12-21. In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. R. 21. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since October 13, 2010, the application date. R. 14. At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease, lumbar radiculopathy, and substance abuse. *Id.* At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). R. 15.

At step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform sedentary work. R. 18. The ALJ also found that Claimant's RFC was further limited because he could only: (1) lift or carry twenty pounds occasionally and ten pounds frequently; (2) sit six hours per an eight-hour workday; (3) stand or walk two hours per a workday, if done in fifteen minute increments; (4) occasionally climb stairs, ramps, ladders, ropes, and scaffolds; (5)

2

occasionally kneel, crouch, stoop, balance, or crawl; and (6) not be exposed to unprotected heights or hazardous moving machinery. R. 15. The ALJ's last relevant RFC finding was that Claimant was limited to "only routine and unskilled tasks" because of his pain. *Id.*

At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy which Claimant could perform. R. 20. Specifically, the ALJ found Claimant could work as a Document Preparer, Address Clerk, or Circuit Board Assembler. R. 21. Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. *Id.*

On May 8, 2012, Claimant sought review of the ALJ's decision. R. 7. On April 30, 2013, the Social Security Appeals Council denied Claimant's request. R. 1-3. Because of that denial, the ALJ's decision became the final decision of the Commissioner. R. 1. *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

An ALJ's opinion only will be reversed if it is not supported by substantial evidence or is premised on an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The substantial evidence standard only requires that there be enough evidence that a reasonable person might accept it as adequate to support an ALJ's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). But, even under this standard, a mere scintilla of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if an ALJ does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While an

3

ALJ's opinion need not address all the evidence in the record, the analysis still must illustrate the reasoning behind the decision. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). This means that, at a minimum, the analysis must be articulated with enough detail and clarity to allow for meaningful appellate review. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

### III. ANALYSIS

**A. The ALJ Did Not Properly Weigh the Medical Opinions of Dr. Konstantin Slavin and Dr. Adeyoyin Okunade, Claimant's Treating Physicians.**

Claimant first asserts that the ALJ erred in weighing the medical opinions of two treating physicians, Dr. Konstantin Slavin and Dr. Adeyoyin Okunade.

A "treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder*, 529 F.3d at 415. If well-supported contradictory evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight; it becomes another piece of evidence for the ALJ to weigh. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Even then, however, the ALJ still must give deference to the treating physician's opinion and weigh it using the factors provided in 20 C.F.R. § 404.1527 and § 416.927. *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015). In considering these factors, an ALJ must at least minimally articulate his or her good reasons for discounting a treating physician's opinion. *Henke v. Astrue*, 498 F. App'x. 636, 639 (7th Cir. 2012); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

4

### 1. Dr. Slavin

Dr. Slavin was Claimant's treating neurosurgeon. R. 19. Dr. Slavin described Claimant's severe pain in his back and legs and diagnosed him with failed back surgery syndrome. R. 19. Further, the ALJ explained that Dr. Slavin determined Claimant was unable to work due to the severe pain, an opinion with which Dr. Slavin said "everyone agrees." *Id.* But the ALJ gave Dr. Slavin's opinions no weight. *Id.* He justified this decision because: (1) the Commissioner, not the treating physician, decides whether someone is disabled and (2) Dr. Slavin did not perform a function-by-function analysis. *Id.* Neither of these rationales justify the ALJ's decision.

The regulations do reserve to the Commissioner "the *final* responsibility for deciding residual functional capacity (ability to work—and so whether the application is disabled)." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). This means that a treating physician's assertion that a claimant is disabled is not conclusive or dispositive on its own. *Flores v. Massanari*, 19 F. App'x. 393, 402 (7th Cir. 2001). The regulation, however, does not permit an ALJ to cast aside completely a medical opinion concerning a claimant's ability to work just because the doctor opines the Claimant is too disabled to work. *Collins v. Astrue*, 324 F. App'x. 516, 520 (7th Cir. 2009). Indeed, the legal question whether a claimant is sufficiently disabled to qualify for social security benefits cannot be answered without consideration of a claimant's ability to work full time. *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). Relevant medical testimony on such matters cannot be "ignored." *Id.* This rule even extends to medical testimony that a claimant is "disabled and unable to perform any functions." *Id. See also Larson v. Colvin*, 26 F. Supp. 3d 798, 808 (N.D. Ill. 2014) (citing *Moore v. Colvin*, 743 F.3d 1118, 1126-27 (7th Cir. 2014). The ALJ here erred in holding that Dr. Slavin's opinion was entitled to no

weight because he opined that Claimant was too disabled to work. The ALJ could have asked for clarification or additional information from Dr. Slavin. *Nichols v. Colvin*, 2013 WL 4495524, at *11 (N.D. Ill. Aug. 21, 2013). He could have weighed Dr. Slavin's opinion with other consistent or inconsistent evidence in the record. Instead of doing any of these things, the ALJ simply discarded Dr. Slavin's opinion, which is improper.

The ALJ's second rationale – that Dr. Slavin failed to perform a function-by-function analysis – fares no better. A treating physician is not required to make a function-by-function analysis. *Burnam v. Astrue*, 2012 WL 710512, at *15 (N.D. Ill. Mar. 5, 2012) *aff'd sub nom. Burnam v. Colvin*, 525 F. App'x. 461 (7th Cir. 2013); *Nash v. Colvin*, 2013 WL 5753796, at *12 (N.D. Ill. Oct. 23, 2013). *See also Colson v. Colvin*, 2015 WL 4880965, at *9 (N.D. Ill. Aug. 14, 2015) ("Dr. Putini's failure to provide [a function-by-function analysis] . . . does not support the ALJ's decision to disregard her opinions.").

The Commissioner also argues that the opinion of a doctor who does not perform a function-by-function analysis is "slight, a best," citing *Books v. Chater*, 91 F.3d 972 (7th Cir. 1985). The case cited does not stand for that proposition. In *Books*, the only issue was whether the claimant's RFC was consistent with gainful employment. *Id.* at 978. The physician did not provide an opinion related to this question. *Id.* That is why the court in that case said the doctor's opinion was "at best" slightly useful. *Id.* Here, Dr. Slavin offered an opinion relevant to the matters at issue. Therefore, *Books* provides no insight relevant to this case.

Dr. Slavin's medical opinion was perhaps not as robust or fulsome as it might have been, but the ALJ's decision to afford it "no weight" is not supported by substantial evidence, nor is it in accordance with law in this Circuit.

## 2. Dr. Okunade

The ALJ described Dr. Okunade as the "claimant's treating physician" (R. 18) meaning his opinion also was entitled to significant weight under controlling law and regulations. The ALJ explained how Dr. Okunade described Claimant's diagnosis and detailed his signs and symptoms, including chronic plain, impaired sleep, impaired concentration, left radiculopathy, and numbness and tingling. R. 18-19. According to the ALJ, Dr. Okunade determined that lifting, bending, stooping, and reaching would make Claimant's pain worse, even if only done occasionally during the work day. R. 19. The ALJ also stated that Dr. Okunade believed Claimant's pain and fatigue frequently would impair his concentration and attention. *Id.* Finally, the ALJ conveyed Dr. Okunade's observation that Claimant would miss work more than three times each month. *Id.*

In considering Dr. Okunade's opinion, the ALJ only gave it "some weight." *Id.* It is not clear what that means. The ALJ offered several reasons for his decision to discount Dr. Okunade's opinion. *Id.* First, Dr. Okunade assumed "facts not supported by the record." *Id.* Second, Dr. Okunade's opinion that Claimant would miss more than three days of work each month was based only on Claimant's representation. *Id.* Third, Dr. Semerdjian, the independent medical expert witness, contradicted Dr. Okunade. *Id.* Fourth, Dr. Okunade was "unsure" as to whether Claimant could work in a sedentary occupation on a full-time basis. *Id.* Fifth, Dr. Okunade had only a short-term relationship with Claimant, examining him on only two instances. *Id.*

The first reason is hard to understand. The ALJ did not say why or in what ways Dr. Okunade's medical opinions were based on facts not supported by the record, and the ALJ failed to identify a single fact assumed by Dr. Okunade that was not in the record. Therefore, the ALJ

7

failed to build a logical bridge between his first rationale and whatever weight he accorded Dr. Okunade's opinion.

The second reason – Dr. Okunade's seeming reliance on Claimant's representation as to how often he would be absent from work – is a basis for giving the doctor's opinion less weight on that issue. After all, opinions that are not based on objective evidence but, instead, just regurgitate subjective complaints are not medical opinions. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ, however, did not explain how Dr. Okunade's apparent reliance on Claimant's self-assessment, considering other evidence in the record, was unreliable or wrong. Still, if this were the only basis for Dr. Okunade's opinion, the ALJ's decision to discount such an opinion might be understandable. In context of other reasons the AJL gave for his decision to discount the doctor's opinion, however, the Court does not know how much weight the ALJ gave to this reason and how much he gave to other reasons that do not pass muster.

With respect to the third reason – Dr. Semerdjian's assertedly contradictory testimony – the ALJ made two errors. First, he failed to actually identify specific conflicts or explain why they undercut Dr. Okunade's opinion. Second, confronted with what he believed were conflicts, the ALJ chose the opinion of the consulting medical expert, Dr. Semerdjian, because he reviewed the entire medical record and observed Claimant at the hearing. R. 19. The ALJ does not identify a single piece of evidence Dr. Okunade did not consider or a single insight that Dr. Semerdjian was able to draw because he saw Claimant testify. In other words, the ALJ failed to explain why this case merited casting aside the greater weight given to a treating physician's opinion in favor of a consulting expert who never met the Claimant. It is well-established that a treating physician, even a physician with a relatively short treatment relationship with his patient, usually is more familiar with a claimant's condition than a reviewing physician who never met or

8

examined the claimant, *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), and, therefore, is in a better position to assess his limitations. *Suess v. Colvin*, 945 F. Supp. 2d 920, 932 (N.D. Ill. 2013).

The ALJ's fourth and fifth reasons for discounting the ALJ's opinion -- that Dr. Okunade was unsure whether Claimant could work full-time at a sedentary job and that he only saw Claimant twice -- may be reasons to discount Dr. Okunade's opinion. Here again, however, the Court does not know how heavily these reasons factored into the ALJ's decision to give Dr. Okunade's opinion only "some weight" and how much weight the ALJ actually gave Dr. Okunade's opinion. Neither reason would seem to justify rejecting Dr. Okunade's opinion outright; which effectively is what the ALJ did here despite his "some weight" characterization. The ALJ may, of course, reconsider these two bases on remand and expand upon how they affect his determination of the weight to be given to Dr. Okunade's opinion.

The bottom line is the ALJ disregarded the opinions of Claimants two treating physicians in favor of the opinion of a consulting expert who never examined Claimant in a way that does not allow the Court to determine whether that decision is supported by substantial evidence. In the Court's view, remand is the appropriate result in that circumstance.

### 3. Harmless Error

The Commissioner argues that any improper weighing of the medical opinion evidence in this case is harmless error. Under the doctrine of harmless error, a case will not be reversed when remand would be "pointless." *Walters v. Astrue*, 444 F. App'x. 913, 919 (7th Cir. 2011). In this case, that standard is not met. The ALJ disregarded the only medical opinions from treating doctors. More heavily weighing their opinions could impact significantly the ALJ's decision. Dr. Slavin clearly stated that Claimant is "unable to work, because of severe pain" in

9

his back and legs. R. 254. Likewise, Dr. Okunade explained that Claimant's pain could be increased by certain physical activities that were permitted under the ALJ's RFC, such as lifting, bending, stooping, and reaching. R. 309. He also noted that Claimant's pain and fatigue frequently could impact his concentration and attention. *Id.* While the ALJ did incorporate into his RFC some limitation on Claimant's attention and concentration, the ALJ very well may have increased the limitation if he gave more weight to the opinions of Claimant's two treating physicians. Clearly, remand would not be "pointless" in this case.

**B.     The ALJ Did Not Properly Weigh Claimant's Testimony.**

Claimant next argues that the ALJ erred in weighing Claimant's testimony. The ALJ found that Claimant largely was not credible citing his (1) course of treatment, (2) daily activities, (3) application for unemployment benefits, and (4) testimony about his use of drugs. The ALJ also discounted Claimant's credibility saying his claims are not supported by the objective medical evidence. R. 16-18.

As a general matter, the ALJ failed to explain what parts of Claimant's testimony he found credible and why he found them so. He used boilerplate language disclaiming Claimant's testimony "to the extent" that it is "inconsistent with" the RFC. R. 16. He noted that, when taken as a whole, Claimant's testimony eroded his credibility. R. 18. Clearly, the ALJ seemed to credit some parts of Claimant's testimony but not others. However, an ALJ's reasoning is not clarified simply because a reviewing court could speculate that he found some of a claimant's statements to be credible. *Nichols*, 10 F. Supp. 3d at 907. The ALJ is responsible for building a logical bridge. He did not do so here.

10

### 1. Treatment History

Both sporadic treatment and noncompliance with treatment can erode a claimant's credibility. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). However, neither can form the basis of an adverse inference until an ALJ has examined why either occurred. *Id.* If this examination reveals that a claimant has a good reason for sporadic treatment or noncompliance, that precludes an adverse finding. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Examples of good reasons for sporadic or limited treatment include inability to afford treatment, ineffectiveness of further treatment, and intolerable side effects. *Shauger*, 675 F.3d at 696.

Here, the ALJ faulted Claimant for failing to participate fully in a spinal stimulation trial because he only used the stimulator for five hours during an entire week. R. 17. According to Claimant, however, the stimulator caused an uncomfortable feeling and had minimal effect on his pain. R. 271. There was no contrary evidence cited by the ALJ that demonstrated the effectiveness or tolerability of the spinal stimulator. Because the only evidence in the record about the spinal stimulator indicates that it was ineffective and had negative side effects, Claimant's discontinuing that treatment cannot be the basis for an adverse credibility inference.

The ALJ also seems to have faulted Claimant for not having another back surgery. R. 17. But Claimant has had two surgeries and his doctors do not recommend another. R. 236, 264. The ALJ faulted Claimant for not following-up with a neurosurgeon, but notes that he followed up with his primary care doctor. R. 17. Claimant has continued to take his medications, even though he claims they have little effect. *Id.* The ALJ did not adequately explore Claimant's reasons for each of the above treatment decisions before finding him not credible.

The Commissioner cites two main cases on this issue, *Castile v. Astrue*, 617 F.3d 923 (7th Cir. 2010), and *Schmidt v. Astrue*, 496 F.3d 833 (7th Cir. 2007). In *Castille*, the claimant

11

"refused or utterly failed to adhere to the treatment programs." *Castille*, 617 F.3d at 930. Likewise, in *Schmidt*, the claimant "voluntarily discontinued physical therapy and declined to pursue pain management . . . ." *Schmidt*, 496 F.3d at 844. Neither case is relevant here because Claimant has continued with the course of treatment recommended by his physicians.

### 2. Daily Activities

An ALJ can consider a claimant's daily activities when assessing his alleged symptoms, but also must consider the differences between those activities and the ability to work eight hours a day, five consecutive days of the week. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). An ALJ cannot ignore a claimant's qualifications as to how his daily activities are carried out. *See Craft*, 539 F.3d at 680. Such consideration and analysis is important, because a claimant's limited daily activities do not necessarily contradict a claim of disabling pain. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2001). Indeed, the Seventh Circuit has noted that ALJs often fail to understand the crucial differences between a claimant's ability to attend to routine tasks of daily living and a claimant's ability to perform a full-time job. *Bjornson*, 671 F.3d at 647.

Here, the ALJ thought that Claimant's daily activities suggested that he was exaggerating how much pain he actually felt. R. 18. Among those daily activities were taking care of personal hygiene, taking public transportation, performing household chores like cooking and mopping, and playing computer chess. *Id.* The ALJ failed to explain how engaging in these activities shows that Claimant's pain was less severe than he claims. Further, taking care of personal hygiene, performing household chores, and playing games are not typically indicators of an ability to work a normal eight hour a day job. *See Reese v. Colvin*, 2014 WL 1319364, at *7 (N.D. Ind. Mar. 27, 2014); *Quillman v. Colvin*, 2013 WL 5770488, at *7 (W.D. Wis. Oct. 24,

12

2013). Finally, the ALJ failed to discuss the numerous limitations that Claimant testified about, including, for example, the slow speed at which he must get out of the bath tub, R. 50, and the constant breaks he must take while doing household chores, R. 44-45. The ALJ's credibility determination based on Claimant's daily activities was not supported by substantial evidence or adequately articulated and explained.

### 3. Unemployment Benefits

In this Circuit, an ALJ typically is allowed to give some consideration to a claimant's application for unemployment benefits. *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014). However, an adverse credibility inference only can be drawn from such conduct after the relevant facts have been considered carefully. *Id.* This consideration is important because, as the Seventh Circuit has recognized, desperate people can do desperate things; that is they could lie about being able to work. *Richards v. Astrue*, 370 F. App'x. 727, 732 (7th Cir. 2010). *See also Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (implying that an adverse credibility inference may be inappropriate where a claimant is "forced into seeking employment by desperate financial straits"); *Raducha v. Colvin*, 2014 WL 4905702, at *9 (N.D. Ind. Sept. 30, 2014) ("[A] disabled claimant may seek unemployment benefits because he is desperate and has no other source of income.").

Here, the ALJ noted that Claimant's application for unemployment benefits could be reconciled with his claims but still found that his applying for unemployment benefits eroded his credibility. R. 18. Claimant testified that he was motivated "by force" to look for a job because he "[has] to have an income" or else his family and he "won't be able to eat." R. 46-47. This unrebutted testimony indicates that Claimant was applying for unemployment benefits under financial duress, rendering an adverse credibility inference improper.

13

### 4. Drug Use

The ALJ found that Claimant's testimony about his drug use was not fully credible because "he has testified that he has not used cocaine since the placement of his spinal cord stimulator" even though he used cocaine and marijuana the day before it was removed. R. 18. Claimant actually testified he used drugs "around the time" the stimulator was implanted. R. 38. The stimulator was removed a week after it was put in. So, "around the time" the stimulator was put in may or may not include a week on either side of that event. The Court acknowledges, however, that an ALJ who finds that a claimant lied about drug use could find that the claimant also was not truthful in other respects. Here, however, the only arguable evidence in the record the ALJ cites for this adverse credibility finding is Claimant's alleged inconsistent testimony about his use of drugs "around the time" the stimulator was implanted. The ALJ did not explain how this alleged inconsistency, if it is, in fact, an inconsistency, merited not believing everything else the Claimant said. The ALJ's boilerplate finding that Claimant was not credible "to the extent" his testimony is "inconsistent with" the "ALJs RFC determination does not provide the logical bridge required.[2]

### 5. Medical Evidence

The ALJ did not believe that Claimant was being truthful when describing his pain level and functional limitations because, in the ALJ's view, his claims were not supported by the objective medical evidence. R. 17. The Seventh Circuit often has criticized ALJs for distinguishing between subjective and objective evidence of pain because "pain can be real and intense yet its cause not be discernible by medical tests or examinations." *Adaire v. Colvin*, 778

---

[2] The Commissioner notes that the record may contain evidence of additional drug use. However, that evidence was not relied upon by the ALJ. Therefore, it cannot serve as a basis for affirming the ALJ's decision. *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943); *Steele v. Barnhart*, 290 F. 3d 936, 941 (7th Cir. 2002).

F.3d 685, 687 (7th Cir. 2015). The Seventh Circuit has been particularly critical of such distinctions where there is objective evidence of pain. *Id.* In this case, there is substantial objective evidence of pain. Indeed, the ALJ found that Claimant has severe impairments, R. 14, which both treating physicians and Dr. Semerdjian agree could cause the pain that Claimant alleges. R. 54, 254, 308-309. The ALJ's summary conclusion that "medical evidence of record does not support the claimant's allegations of disabling pain and functional limitations" (R.17) is insufficient under these circumstances.

### 6. Harmless Error

The ALJ's errors with respect to Claimant's credibility were not harmless. As described above, almost every basis upon which he relied was improper. Because this is a case where the claim of disability is based largely on claims of pain, Claimant's credibility is key. If the ALJ had found Claimant credible, his ruling may well have been different. Therefore, remand would not be pointless.

### C. The ALJ Properly Relied on the VE's Testimony.

Finally, Claimant contends that the ALJ erred in relying on the VE's testimony because his testimony was inconsistent with the Dictionary of Occupational titles ("DOT"). Specifically, Claimant asserts that there was a conflict between the ALJ's questions limiting Claimant to "unskilled, routine tasks," R. 62, and the three jobs identified by the VE, two of which required level two reasoning and one of which required level three reasoning. Claimant asserts that, at a minimum, the conflict required that the ALJ further inquire into the matter with the VE.

"The Seventh Circuit has held that an ALJ may rely on imperfect VE testimony if a claimant does not question the basis for the testimony at the time of the hearing." *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 948 (N.D. Ind. 2012). It is true that an ALJ must identify and

15

rectify *apparent* conflicts between the VE's testimony and the DOT. *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011). However, conflicts are only apparent when they are so obvious that an ALJ should have noticed them without assistance. *Mason v. Colvin*, 2014 WL 5543896, at *8 (N.D. Ill. Nov. 3, 2014).

In this Circuit, many courts have found that a limitation to simple, routine tasks is not inconsistent with level two reasoning. *Id. See also Eggleston v. Colvin*, 2015 WL 2208221, at *5 (N.D. Ill. May 7, 2015); *McCain v. Colvin*, 2013 WL 6283638, at *7 (N.D. Ill. Dec. 4, 2013); *Thompkins v. Astrue*, 2010 WL 5071193, at *11 (N.D. Ill. Dec. 6, 2010). Likewise, courts have found that a limitation to simple, unskilled work is not inconsistent with level two reasoning. *Pomilia v. Astrue*, 2012 WL 691628, at *18 (N.D. Ind. Mar. 2, 2012) (emphasis added). *See also Eggleston*, 2015 WL 2208221, at *5; *Thompkins*, 2010 WL 5071193, at *3.

Here, the ALJ asked about "unskilled, routine tasks." R. 62. As demonstrated by the collected cases, neither routine nor unskilled is inconsistent with level two reasoning. Because there was no conflict, much less an apparent one, there was no requirement for the ALJ to ask further questions. *Mason*, 2014 WL 5543896, at *8; *McCain*, 2013 WL 6283638, at *8.

In attempting to overcome this body of case law, Plaintiff relies on *Macek v. Colvin*, 2014 WL 789110 (N.D. Ind. Feb. 26, 2014). That case discussed a one- to two- step limitation, *id.* at *3, which is narrower than the type of limitation to simple and routine or unskilled tasks that is at issue in this case, *Pomilia*, 2012 WL 691628, at *19. Moreover, *Macek* concedes that even a conflict between a one- to two- step limitation and a level two job may not be obvious error. *Macek*, 2014 WL 789110, at *3. *Macek*'s conclusion in this respect is consistent with other courts. *See, e.g., Gilbert ex rel. S.E. v. Colvin*, 2013 WL 4599348, at *15 (N.D. Ill. Aug. 29, 2013).

Finally, this Court need not decide whether a limitation to unskilled, routine tasks is consistent with a level three reasoning job. The VE identified two level two jobs. And, as described above, those were consistent with the ALJ's limitations. Therefore, any error the ALJ *might* have made in not questioning the VE about the level three job would be harmless.

## IV. CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment [ECF No. 16] is granted. The matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 2, 2015